## Case No. 10,058.

### The NAUTILUS.

[1 Ware, 529.] 1

District Court, D. Maine. March 22, 1854.

COLLISION—BOTH IN FAULT—DAMAGES BY MOIETIES—DIFFERENCE OF VALUE OF VESSELS—INSCRUTABLE FAULT—FORTUITOUS COLLISION.

1. In cases of collision, occasioned by faults on both sides, the damages are divided between the two vessels by moieties without regard to the difference of their value.

2. The same rule, it seems, prevails when the collision is occasioned by faults, but they are inscrutable, and it cannot be determined whether they are imputable to one party or the other.

[Cited in The Comet, Case No. 3,050; The J. W. Everman, Id. 7,591.]

[See Bayard v. The Coal Valley, Case No. 1,-128.]

3. Where the collision is purely fortuitous, by the law of this country each vessel bears its own loss, but by the maritime law of most European states it is divided between them by moieties.

[4. Cited in The Mary Patten, Case No. 9,223, and in Vanderbilt v. Reynolds, Id. 16,839, to the point that when collision is by fault of both parties, costs will be refused to both.]

This was a libel in a cause of damage by collision. The Nautilus, a steamboat of about one hundred and forty tons burden used as a tow-boat on the waters of the Penobscot, started from Bangor, November 8, 1853, with two vessels in tow, down the river. Leaving one at Frankfort, she proceeded with the other, and arrived at Bucksport Narrows between nine and ten o'clock in the evening. On rounding Fort Point, at the entrance of the Narrows, she saw a steamer coming up the river below Ralph's Point, another projection on the opposite side of the river. It proved to be the Malden, another tow-boat, which, having carried down her tow, was on her return. The Nautilus was descending with the ebb tide at the rate of about eight miles an hour, and the Malden ascending at the rate of four or five, the tide making about three miles difference in the progress of the vessels. There had been in the beginning of the evening a squall of snow, but that was past, and though the sky was overcast, yet the moon being at her second quarter, there was sufficient light for the men on board each boat to see the other at the distance of half a mile or more. The Malden, of about one hundred and five tons burden, had a crew of six hands. As they were ascending, and at the time of the collision, the mate was at the helm, the engineer in the engine-house, and the captain in the cook-house. She had no signal lights to be seen, except lights at two small windows looking forward from the engine room, and these could scarcely answer the purpose of signal lights. The Nautilus had a crew of seven men. From the time she rounded Fort Point and entered the Narrows, the master was at the wheel, the engineer in the engine-house, and Stubbs, one of the hands, forward on the look-out. She bore two signal lights, one on the top of the engine-room, and one hanging on the braces of the smoke pipe. These were the most material facts.

Rowe & Hubbard, for libellants.

Fessenden & Deblois, for respondents.

WARE, District Judge. It seems hardly possible that two vessels approaching each other, both moved by steam and thus having

---

1 [Reported by Edward H. Daveis, Esq.]

the complete control of their own motions, in a river of ample width to allow a safe passage, and in an evening light enough for them to be seen, even without signal lights, at the distance of half a mile, should come in collision without faults on one side or the other, or both. The law in defining the rights and liabilities of vessels, in cases of collision, is quite well settled. If the collision happens by the fault of one of the vessels, she must repair the damage which has been occasioned by her fault. If it was purely fortuitous, or was occasioned vi majore, without fault or negligence in either party, this by the common law is held to be damnum fatale, and each vessel must bear her own loss; and this, in a recent case, has been held by the supreme court to be the rule of the maritime law of this country. But where the collision has not been purely fortuitous or an unavoidable accident, but has been occasioned by faults on both sides,—or it has been occasioned by faults, and they are entirely inscrutable, and it cannot be determined whether they are imputable to one party or the other,—in either of these cases the maritime law, by what has been called a "judicium rusticum," divides the loss between them by moieties, without regard to the comparative value of the vessels, and without undertaking to determine whether the faults were greater on one side or the other. The Scioto [Case No. 12,508]; 3 Kent, Comm. 231; Abb. Shipp. p. 229, where the authorities are collected. The maritime law, on principles of public policy, departs from the principles of natural law, by which no one can be held responsible for an injury until it is shown to be imputable to his fault, and it differs also from the rule of the common law applicable to analogous cases on land, which holds that the complaining party cannot recover for a damage where it appears that it was in part imputable to his own negligence or fault, although the defendant may also have been in fault; that when there are mutual faults, neither party has a remedy against the other. 2 Greenl. Ev. § 473.

Let these principles be applied to the present case. It cannot be pretended that a collision between these two vessels, approaching in plain sight of each other, and each seen from a half to three fourths of a mile distant, was unavoidable; nor is it pretended that the collision was occasioned by any wanton or wilful misconduct of either party. But in the sense of the law, under the term faults, for which a party is held responsible in these cases, is included not only wilful misconduct but the neglect of any proper precaution to avoid a collision, and any want of care, vigilance, or skill in the management of the vessel. In this sense of the word the Malden was in fault in not using the precaution which is required, not only by the general laws of the sea, in the navigation of narrow waters much frequented by vessels, of showing signal lights, to give notice to others of her position and movements, but which is ex-

pressly enjoined by the act of congress of July 7, 1838 (5 Stat. 306). It has been held by the supreme court, that this neglect alone is sufficient to throw on a vessel the burden of proving that the accident is not attributable to this omission. Waring v. Clarke, 5 How. [46 U. S.] 441. In the second place, my opinion is that there was not at the time of the collision a sufficient watch on deck. In this narrow passage of the river, where the currents are somewhat baffling, the master was below in the cook-room, leaving no one on deck but the man at the helm, and the engineer in the engine-house. When a boat was seen approaching in a part of the river where the navigation is so critical, the master, if not on deck, ought immediately to have been called. Had that been done the collision might perhaps have been avoided. My opinion is that there were faults on the part of the Malden that are a bar to her recovery for the full amount of damage she has sustained, and also for any part of it, unless it is shown that there were such faults on the part of the Nautilus as require, on the principles of law, the loss to be divided between the two.

And here the first fact that meets us in this misadventure is that it took place in the centre of the stream. By a law of the sea, perfectly well understood by all navigators, when two vessels are approaching each other, each party is bound to take the right and pass the other on her larboard. These two vessels were approaching in a narrow and winding part of the river, and each seeing the other at the distance of half or three quarters of a mile before they met. Each was entitled to the side of the stream on her right, and, to avoid the danger of collision, was bound to take it. Neither party had in strictness a right to the centre, and there was nothing in the currents that necessarily prevented either from keeping near his own shore. And yet they met in the centre. From this fact alone, in the absence of all explanation, the inference would be that both were in fault. In such cases neither party is justified in saying, I have as good a right to the centre as the other, and because his vessel is strong, take the risk of collision; because each party is bound, without regard to the course of the other, to employ every effort of vigilance and skill to avoid a collision. But what places the Nautilus under graver difficulties is, that at the time of the collision, she was heading towards the eastern shore, and putting herself directly into waters that belonged to the Malden. The reason given for this is that she was deceived by the movements of the Malden, and supposed that she was intending to pass on the western side. If she was so deceived, it may still be asked, was she necessarily so deceived? The fact is that the Malden was headed towards the eastern shore. In the excitement and confusion of an apprehended collision, it is not surprising that one should misjudge, and this

will certainly not be imputed as a crime. But in these cases the master is liable sometimes for errors of judgment. He may be responsible for a mistake which a more cool, vigilant, or skilful man would have avoided. On a consideration of all the evidence in the case, I am not satisfied that the faults were wholly on one side, and when this is the fact, the conclusion, as I understand the law, is that the loss shall be divided between the parties. The prevailing rule of the law of the continental states of Europe, is that the loss shall be divided, where the accident is simply fortuitous without faults in either party; and as a rule of expediency it is vindicated on the plausible, if not satisfactory reason that it tends to make large and strong vessels cautious in avoiding vessels of inferior size and strength, though the danger of injury to themselves may be small, and thus contributes to the general security of navigation. In our law the rule is settled otherwise. But when it is quite certain that the collision was not an inevitable accident, but was preceded and occasioned by errors, mistakes, and faults, and it is not clearly shown that the faults were all on one side, it seems to me to be a salutary rule to divide the loss between them. I am not aware of any case in which this precise point has been decided by our courts; and it may be objected that it is repugnant to the rule of the common law in analogous cases on land; but it appears to me in conformity with the spirit of the maritime law, which generally aims more at practical utility and the interests of navigation, than at a logical and scientific deduction of general and abstract principles. It seems also to have approved itself to the mind of that great jurisconsult and wise judge, Chancellor Kent.

The damages sustained by the Malden, according to a careful and particular estimate of the materials and labor required to repair her, are put at $591. That done to the Nautilus was small. A boat was destroyed, worth $35, and a slight injury to the hull, amounting to about $25; in the whole, $60. This, added to the damage of the Malden, makes the total damage $651, and divided between them gives to each $325.50. It was suggested at the argument, that there should be a deduction as in insurance cases, of one third of the repairs for the difference between new and old. No authority was cited for the application of this rule to cases of damage by collision, and I am not aware that it has ever been extended to these cases. Even if in some cases it might be equitable, I am not satisfied it would be in this. The principle on which the damages were estimated was, what would be the cost of putting the two vessels in as good a plight as they were before the collision, and that is the damage that ought to be repaired.

DECREE: The whole damage to be divided between the two vessels by moieties and each party to pay his own costs.